Hillsborough,
No. 4255.

LIZZIE B. MCPHEE *v.* J. WESLEY COLBURN.

Argued  December 2, 1953.

Decided December 21, 1953.

*Louis M. Janelle* (by brief and orally), for the plaintiff.

*Hamblett, Moran & Hamblett* (*Mr. Charles K. Hamblett* orally), for the defendant.

DUNCAN, J. The defendant seeks to question the sufficiency of the evidence to support certain findings of the Trial Court, although the issue was not raised before the case was submitted. In particular he seeks upon this ground to question the findings that on the death of Mabel E. Colburn the joint accounts were part of the residue of the estate of James E. Colburn, and that the defendant acquired no interest in the funds on deposit during Mrs. Colburn's lifetime. It is well settled that the issue of the suf-

ficiency of the evidence may not first be raised after verdict as a matter of right. *Eastman* v. *Waisman*, 94 N. H. 253; *Perreault* v. *Lyons*, 98 N. H. 317. The defendant is entitled however, to raise any questions of law apparent upon the face of findings and rulings made. *Freeman* v. *Pacific Mills*, 84 N. H. 383; *Eastman* v. *Waisman, supra,* 254.

The finding that the defendant acquired no rights in the accounts by virtue of what transpired between him and his mother during her lifetime was clearly permissible upon the evidence. A conclusion that a debt from Mrs. Colburn to the defendant arose out of assistance which he had furnished her was not compelled (see *Blake* v. *Lord,* 90 N. H. 42, 44; *Decatur* v. *Cooper,* 85 N. H. 250), nor was the evidence such as to require a finding that a completed gift of a present interest in the accounts resulted from Mrs. Colburn's delivery of the account books to the defendant. *New Hampshire Sav. Bank* v. *McMullen,* 88 N. H. 123, 128. The defendant testified: "she wanted to give me money but I wouldn't take it"; "she gave it to me to take the whole thing if I wanted it, but I never touched it"; "I owned the safety deposit box anyway, and I kept [the books] in there, and she could go anytime she wanted and get them"; "she was still using that money." His own testimony was sufficient to overcome any presumption of acceptance of a gift tendered by his mother. Similarly there was sufficient evidence to warrant the finding that the proceeds of the sale of the stock and substantially all of the proceeds from the house were deposited in the accounts in question. The findings may not be successfully attacked for want of evidence to support them.

Mrs. Colburn's interest in the proceeds from the sale of the house and stock was that of a life tenant with power of disposal, an estate well recognized in this jurisdiction. *In re Gile Estate,* 95 N. H. 270; *Belford* v. *Olson,* 94 N. H. 278, 280, and cases cited. Her power of disposal was not unlimited, but in accordance with the will "if [the] income should be insufficient to properly care for her" permitted her to use "so much of the principal as . . . necessary for her proper care." As the defendant correctly points out the will also provided that she should be "the sole judge of what is right and proper for her suitable care and maintenance," but this provision does little more than reaffirm the previously expressed limitation restricting her use of principal to use for her "proper," "suitable care." Since it is found that no effective transfer was

made to the defendant, the extent to which Mrs. Colburn's power of disposal was subject to a limitation of reasonable necessity for her support (see *Orr* v. *Moses,* 94 N. H. 309, 312, and cases cited), need not be determined. Any assets of her husband's estate which she had not used for her suitable care and maintenance remained assets of his estate. *Shapleigh* v. *Shapleigh,* 69 N. H. 577, 581. At her death title to such property was controlled by the provision of his will giving to the plaintiff and the defendant in equal shares "what remains of my property." It follows that there was no error in the ruling that the funds on deposit at Mrs. Colburn's death, already found to have derived from the sale of the house and the stock formerly belonging to James E. Colburn, were a part of the residue of his estate.

The defendant strongly urges that the proceeds from the sale of the stock stand upon a different footing from those derived from the real estate, and were freed of any limitation contained in the James Colburn will because "the stock belonged to Mrs. Colburn in fee." This contention is based upon testimony by the deputy register of probate that in 1929 a license was granted for the transfer of the various shares of stock of the James E. Colburn estate "to Mabel E. Colburn in her own right." The probate decree was not in evidence. As appears from findings and rulings previously quoted the Trial Court rejected the defendant's claim that the proceeds of the stock ceased to be a part of the James E. Colburn estate, although it granted his request for a finding that the stock was "transferred to the said Mabel E. Colburn pursuant to license of the Probate Court in fee from the estate of the said James E. Colburn."

In this no error appears. Although the fact does not appear, the stock may have been transferred to Mrs. Colburn's name without indication of the limited nature of her estate. Her right to dividends during her lifetime was absolute, and she was entitled to the use of the principal "for her proper care" if "necessary." There is no evidence that the probate decree for the issue of a license to the administrator was an adjudication that full beneficial interest in the stock should immediately vest in Mrs. Colburn along with the legal title. While she was entitled to use the proceeds of the stock in accordance with the will, she did not do so. "The fact that the old certificates were surrendered and new ones taken out in [her] name does not, as a matter of law, establish [her] ownership of the property." *Weston* v. *Society,* 77 N. H. 576,

580. Consequently there was no error in the finding or ruling that she acquired no interest in the proceeds of the stock which she did not find necessary to use for her care and maintenance. Neither conversion of the stock into cash nor deposit of the cash in the savings account constituted use or disposal for her support, and what remained at her death undisposed of passed under her husband's will.

The defendant's claim that interest aggregating $137.55 credited upon the Nashua Trust Company account during Mrs. Colburn's lifetime became a part of her estate cannot be sustained. The income was bequeathed to her "for and during the term of her natural life." "After [her] death . . . what remain[ed]" of her husband's property was left by him to his two children. "However clear the intention that the life tenant may have all the income if he needs it, or may use or alienate it if he chooses to do so, slight evidence may be enough to prove an intention that so much of it as he neither spends nor conveys shall be considered a part of the property of which it is the unexpended increase." *Kimball* v. *Bible Society*, 65 N. H. 139, 151. The verdict by which the plaintiff was found to be entitled to one-half of this interest was not in error.

One other exception taken by the defendant merits consideration. It is argued that the finding that the defendant "exercised no control over the books" is patently contrary to the evidence. If the finding were to be considered apart from its context this would be so; but it appears in the same sentence with the finding that the defendant kept the books in his safe deposit box, and is followed by the finding that he permitted his mother to have free access to the box for the purpose of using the money. Taken as a whole the findings indicate that the defendant exercised no such control as would establish acceptance of an interest in the deposits which they evidenced. The implication is that he "exercised no control" as a joint owner of the accounts.

*Judgment on the verdict.*

All concurred.